DAVID LIEBRADER, ESQ.
SBN 5048
THE LAW OFFICE OF DAVID LIEBRADER
601 S. RANCHO DR. STE. D-29
LAS VEGAS, NV 89106
Ph: (702) 380-3131
dliebrader@gmail.com
Attorney for Plaintiffs

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | Adversary Case No 16-1009 abl |
| Christopher Michael Chandler and Ofaloto Kikanaina Chandler, | In Re: Case No 15-11026 abl<br>Chapter 7 |
| Debtors, | MOTION FOR SUMMARY JUDGMENT |
| Thomas B. Smith and Sandra E. Yee-Smith | |
| Plaintiffs, | Time: 9:30 A.M.<br>Date: JULY 21, 2016 |
| v. | |
| Christopher Michael Chandler, | Courtroom 1 – 3rd floor<br>Foley Federal Building |
| Defendant | 300 Las Vegas Blvd. S<br>Las Vegas, NV 89101<br>Judge: Hon. August Landis |

<u>NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT</u>

Comes now Plaintiffs, through their counsel, David Liebrader, with this motion for summary judgment on the issue of whether Plaintiffs' Utah District Court judgment against debtor is non dischargeable pursuant to 11 USC 523(a)(19).

This motion is based on the entire case file, the points and authorities contained herein, and any oral argument that this Court may entertain.

## OVERVIEW

This matter arises out of the sale of unregistered securities to Plaintiffs in 2009[1]. Defendant Chandler and his partner Alan Strebeck were co-managers of a Nevada LLC called Full Moon Capital, LLC ("FMC"), which sold unregistered promissory note securities to Plaintiffs. FMC defaulted under the terms of the notes in mid-2010, and on November 17, 2010 Alan Strebeck filed for bankruptcy in the Utah. Plaintiffs timely commenced an adversary proceeding against Strebeck (and FMC's co-manager, Defendant Chandler), which was eventually referred to Utah District Court for trial and a determination of liability.

Defendant Chandler was represented by counsel Cameron Hancock of Dorsey and Whitney throughout the adversary proceeding. On April 2, 2014, a judgment was entered, granting Plaintiffs judgment against Strebeck, FMC and Chandler. The Court made a specific finding that the judgment was based upon violations of Utah and Federal securities laws, making it non dischargeable under 11 USC 523(a)(19). See, infra.

On February 27, 2015 Defendant Chandler filed for bankruptcy in Nevada, and on June 2, 2015, he was granted a discharge. Plaintiffs were not notified of Chandler's bankruptcy filing, but upon learning of it, immediately filed a motion to re-open the bankruptcy, which was granted on January 6, 2016. Plaintiff then filed this adversary proceeding contesting Mr. Chandler's discharge.

## POINTS AND AUTHORITIES

### LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 establishes the procedures for obtaining summary

---

[1] For a through briefing on the underlying securities laws issues, See Plaintiffs' motion for summary judgment filed in the underlying Utah District Court action, attached as Exhibit "B"

2

judgment. Federal Rule of Bankruptcy Procedure makes Rule 56 applicable in adversary proceedings.

Subdivision (a) of Rule 56 of the Federal Rules of Civil Procedure provides:

(a) BY A CLAIMING PARTY. A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim. The motion may be filed at any time after:
(1)     20 days have passed from commencement of the action; or,
(2)     The opposing party serves a motion for summary judgment.

The standard for the granting a motion for summary judgment, according to the language of the rule is that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In the words of the United States Supreme Court, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249; 106 S.Ct. 2505, 2511 (1986.)

In making this determination the court may consider any of the materials set forth in subdivision (c) to wit, pleadings, deposition, answers to interrogatories, admission on file and affidavits as well as any other evidentiary materials submitted by the parties that would be admissible at trial. See 11 Moore's Federal Practice §56.11(2) Matthew Bender 3d ed.)

Under Civil Rule 56, the movant bears the initial burden to show that no material issue of fact exists. Wachovia Bank N.A. v. Commonwealth Sprinkler Corp. 296 B.R. 694,699 (Bankr E.D. Va. 2001.) The movant must inform the court of the basis of the motion and identify the portions of the record that demonstrate the absence of a genuine issue of material

---

to Victor Sipos' Declaration.

3

fact. Schwinn Plan Comm. V. AFS Cycle Co. (In re Schwinn Bicycle Co.) 182 B.R. 514, 521 (Bankr N.D. Ill 1995.) Once the movant demonstrates from the record that there are no genuine issues of material fact, the burden of proof shifts to the party opposing summary judgment to establish that questions of fact exist. See Pettit v. Smith, 241 B.R. 847, 849 (E.D. Pa. 1999) The court must view the evidence in a light most favorable to the non moving party. Any doubt as to the existence of genuine issues of fact will be resolved against the moving party. In re Cantin, 114 B.R. 339, 341 (Bankr. D. Mass. 1990.)

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n. 1 (3d Cir.2001) citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986.)

Here, there is no genuine issue of material fact. Plaintiffs obtained a judgment from the Utah District Court, which contains specific findings that Defendant violated state and federal securities laws. Under 11 USC§523(a)(19) such debt is non dischargeable.

## STATEMENT OF FACTS

In 2014, Plaintiffs obtained a judgment against Debtor in United States District Court, District of Utah (the "Utah action") in the amount of $1,196,000. See Exhibit "A" to supporting Declaration of Victor Sipos. The Utah action named Chandler, FMC and FMC's co –manager Alan Strebeck as Defendants, and was an action for the recovery of investment losses on FMC's defaulted promissory notes.

Defendant Chandler participated in the Utah action, and was represented by counsel, who filed an answer on Chandler's behalf. Discovery was conducted, including requests for

4

admissions.

In his Answer, Chandler responded to the following allegation that he was a manager of FMC:

> **"9. Defendant Full Moon Capital, LLC ("Full Moon Capital") is a Nevada limited liability company. Upon information and belief, at all relevant times Strebeck and Chandler were its managing members.**
>
> **9. Admit."**

See, Complaint and Answer; Exhibits "C" and "D" to Sipos' Declaration.

Plaintiffs' counsel also served requests for admission on Defendant, who, by failing to respond, was deemed to have admitted all of the following:

> **REQUESTS FOR ADMISSIONS**
> Admit that:
> **REQUEST NO. 1** During 2009, YOU were a managing member of FULL MOON.
> **REQUEST NO. 2** During 2009, YOU had an ownership interest in FULL MOON.
> **REQUEST NO. 3** During 2009, YOU received remuneration from FULL MOON.
> **REQUEST NO. 4** During 2009, CHANDLER was a managing member of FULL MOON.
> **REQUEST NO. 5** During 2009, CHANDLER had an ownership interest in FULL MOON.
> **REQUEST NO. 6** During 2009, CHANDLER received remuneration from FULL MOON.
> **REQUEST NO. 7** During 2009, CHANDLER received at least one draw from FULL MOON.
> **REQUEST NO. 8** During 2009, CHANDLER was an authorized signer on a bank account in the name of FULL MOON.

See Exhibit "E" to Sipos' Declaration, attached.

As proof that Chandler played an active role as a manager of FMC, and received money directly from Plaintiffs' investments, attached as Exhibit "F" to Sipos' Declaration are bank account statements showing the deposit of Plaintiffs' funds into FMC's bank account, and checks signed by, and payable to Chandler.

Finally, Exhibit "G" is a printout from the Nevada Secretary of State's website showing Chandler was a manager of FMC (and therefore a control person) during the period in question.

Control person liability forms the basis for Chandler's liability under the securities laws. As Plaintiffs stated in their motion for summary judgment:

> "Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable." *15 U.S.C.A. § 77o(a)*. "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable." *15 U.S.C.A. § 78t(a)*. "To establish a defendant's liability as a controlling person, a plaintiff must prove two things: (i) a primary violation of the securities laws, and (ii) that the defendant had 'control' over the primary violator." *In re*

*Thornburg Mortg., Inc. Securities Litigation*, 683 F.Supp.2d 1236, 1251 (D.N.M. 2010)("The Tenth Circuit observed that § 20(a) 'has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a controlling person liable."). *See also, 17 CFR 230.405* (defining control).

"Every person who directly or indirectly controls a seller or buyer liable under section (1), every partner, officer, or director of such a seller or buyer, every person occupying a similar status or performing similar functions . . . are also liable jointly and severally with and to the same extent as the seller or purchaser." *Utah Code Ann. § 61-1-22(4)(a)*. Utah law related to control persons should be "construed as to effectuate its general purpose to make uniform the law of those states which enact it and coordinate the interpretation and administration of this chapter with the related federal regulation." *Utah Code Ann. § 61-1-27*.

See Plaintiff's motion for summary judgment at p. 13, attached as Exhibit "B" to Sipos' Declaration.

Upon competing discovery, Plaintiffs filed their motion for summary judgment, which the court granted on January 14, 2014. Judgment was entered on February 14, 2014.

Thereafter, Plaintiffs filed a motion to amend the judgment to clarify the basis for the judgment, specifically, to have the judgment reflect the findings that Defendants violated Utah and Federal securities laws. Prior to filing the motion to amend, counsel for Plaintiff sent a copy of his proposed amendment to counsel for Defendant Chandler, Cameron Hancock. See

Exhibit "H" to Sipos' Declaration, attached. Mr. Hancock did not object to the amendment or the proposed language. On April 4, 2014 the court issued the second amended judgment, which was served on all of the parties, and which stands as the final judgment in the matter.

## BASIS FOR NON DISCHARGEABILITY

Under 11 USC §523(a)(19) Plaintiffs' judgment, which is based upon a violation of "state and federal securities laws" is non dischargeable.

The applicable law provides:

**§ 523. Exceptions to discharge**

 (a) **A discharge under section** 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title **does not discharge an individual debtor from any debt—**

**(19) that—**

**(A) is for—**

**(i) the violation of any of the Federal securities laws** (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), **any of the State securities laws, or any regulation or order issued under such Federal or State securities laws;** or

**(ii)** common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; **and**

**(B) results**, before, on, or after the date on which the petition was filed, **from—**

**(i) any judgment**, order, consent order, or decree **entered in any Federal or State judicial or administrative proceeding;**

8

11 U.S.C. § 523. Exceptions to discharge (**Emphasis added**.)

Section 523(a)(19) makes a debt nondischargeable if two conditions are met: (1) the debt is for the violation of federal securities laws, state securities laws, or regulations under the federal or state securities laws, or is for common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and (2) the debt results from a judgment, order, consent order or decree in a federal or state judicial or administrative proceeding or any settlement agreement entered by the debtor or any court or administrative order for the payment of damages, a fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost or other payment owed by the debtor. In re Whitcomb, 303 B.R. 806, 810 (Bankr. N.D.Ill. 2004.)

Plaintiff's judgment is based on Mr. Chandler's violation of both Utah and Federal securities laws as plead in Plaintiff's complaint, specifically Section 15 of the Exchange Act, 15 U.S.C. § 78(o); Section 12(a)(1) and (a)(2) of the Securities Act and Sections 61-1-3 and 61-1-7 of the Utah Uniform Securities Act; See Exhibit "C" to Sipos' Declaration, at pp. 9-12, attached.

"Control person" liability has long been recognized as a basis to deny a discharge, going all the way back to Strang v. Bradner, 114 U.S. 555, 5 S.Ct. 1038 (1885). There, the Supreme Court addressed the issue of whether two bankrupt debtors, who were vicariously liable under agency law for a debt incurred through the fraud of their co-partner, were precluded from discharging that debt in bankruptcy. Strang distinguished prior Court holdings, where the Court had interpreted fraud to mean actual or positive fraud rather than implied fraud. See Strang, 114 U.S. at 559, 5 S. Ct. at 1040 (citing Neal, 95 U.S. at 709). Strang held that Neal's positive fraud requirement was satisfied by the fraud of the debtors' co-

9

partner. The question before the Court in Strang was whether the debtors, who had been unaware of their co-partner's fraud, could nonetheless be precluded from discharging the debt in bankruptcy. See Strang, 114 U.S. at 559, 561, 5 S. Ct. at 1040-41. The Court held that the co-partner's fraud, imputed to the debtors, precluded their discharge of the debt.

## LEGAL ARGUMENT RE: SECTION 523(A) (19).

Section 523(a) (19) was added to the Bankruptcy Code by § 803 of the Corporate and Criminal Fraud Accountability Act of 2002 (Pub.L. No. 107-204)2 (the "Accountability Act"). According to legislative history, the purpose of § 523(a) (19) was to protect investors:

> "Current bankruptcy law may permit such wrongdoers to discharge their obligations under court judgments or settlements based on securities fraud and other securities violations. This loophole in the law should be closed to help defrauded investors recoup their losses and to hold accountable those who violate securities laws after a government unit or private suit results in a judgment or settlement against the wrongdoer."

In re Gibbons, 289 B.R. 588, 592 (Bankr. S.D.N.Y.2003), aff'd.., 311 B.R. 402 (S.D.N.Y.2004), aff'd., 155 Fed. Appx. 534 (2d Cir.2005) quoting S.Rep. No. 107-146 (2002).

Title VIII of the Sarbanes-Oxley Act of 2002 is entitled "The Corporate and Criminal Fraud Accountability Act of 2002" (the "Accountability Act"). The Accountability Act was authored by Senate Judiciary Chairman Patrick Leahy, and introduced by Senator Leahy and others on March 12, 2002. S.Rep. No. 107-146, at 2 (2002). The purpose of the Accountability Act is:

> "To provide for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal
10

investigations, to disallow debts incurred in violation of securities fraud laws from being discharged in bankruptcy, to protect whistleblowers who report fraud against retaliation by their employers, and for other purposes."

"S.Rep. No. 107-146, at 2 (2002). Section 803 of the Accountability Act, titled "Debts nondischargeable if incurred in violation of securities fraud laws," added subsection (19) to the exceptions to discharge enumerated in § 523(a) of the Bankruptcy Code.

"The section, by its terms, applies to both statutory claims under the securities laws and common law fraud, so long as it arises in connection with the purchase or sale of a security."

"Section 523(a)(19) was added to "[a]mend the Bankruptcy Code to make judgments and settlements based upon securities law violations non-dischargeable, protecting victims' ability to recover their losses." 148 CONG. REC. S1787 (daily ed. March 12, 2002)(statement of Senator Leahy); see also S.Rep. No. 107-146 (2002)." In re Gibbons, 289 B.R. 588, 592 (Bank. S.D.N.Y. 2003.)

As stated in . Grogan v. Garner, 498 U.S. 279, 286-287, 111 S.Ct. 654, 659, 112 L.Ed.2d755 (1991): "Discharge of obligations through bankruptcy is available only to the honest but unfortunate debtor, not to sophisticated securities dealers who callously deprive investors of their savings. A central purpose of the Bankruptcy Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt. But in the same breath that we have invoked this "fresh start" policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor ... [Congress has not] favored the interest in giving perpetrators of fraud a fresh start over the interest in

protecting victims of fraud."

## ARGUMENT AND CONCLUSION

This matter was fully litigated in Utah District Court where Defendant was represented by counsel. There is no dispute that Defendant participated in the proceeding; he filed an answer admitting and denying specific issues, and his lawyer regularly communicated with Plaintiffs' counsel throughout the proceeding. After the Court issued its initial judgment, Defendant (through counsel) was apprised that Plaintiffs were asking the court to make specific findings of violations of state and federal securities laws. Defendant did not object, and an amended judgment was entered.

From the time of the filing of Plaintiffs' initial complaint, through discovery, until the entry of judgment, Defendant was on notice that Plaintiffs were seeking a judgment based upon violations of state and federal securities laws. To retry these issues in this court would be a waste of judicial resources and taxpayer funds. Defendant was found liable after having his day in court, represented by counsel. Since Plaintiff's Utah District Court judgment was obtained as a result of Defendant's violations of state and federal securities laws, the court should grant Plaintiffs' motion, and deny Defendant a discharge on Plaintiffs' Utah District Court judgment.

Dated: May 31, 2016

Respectfully submitted,

By: _____

David Liebrader
Attorney for Plaintiffs

###

12